IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAURA ANN JONES,

               Plaintiff,

     v.

CAROLYN W. COLVIN,
Commissioner of Social Security

            Defendant.

Case No. 13-890

**OPINION AND ORDER**

Lisa R.J. Porter, KP Law LLC, 16200 SW Pacific Hwy., Suite H-280, Portland, OR 97224.
Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States
Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite
600, Portland, OR 97204; Kathryn A. Miller, Special Assistant United States Attorney, Office of
General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M.S 221A,
Seattle, WA 98104.
Attorneys for Defendant.

**Michael H. Simon, District Judge.**

     Laura Ann Jones ("Jones") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the

Social Security Act. For the reasons discussed below, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

## STANDARDS

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

Jones was born October 20, 1963 and is 50 years old. AR 110. Jones filed for DIB and SSI on April 23, 2010, alleging disability beginning January 1, 2009. AR 19. In his

PAGE 2 – OPINION AND ORDER

December 11, 2012 decision, the Administrative Law Judge ("ALJ") found Jones met the

insured status for DIB through December 31, 2011. AR 21. At step one, the ALJ found Jones had

not engaged in substantial gainful activity after the alleged onset date of January 1, 2009. AR 21.

At step two, the ALJ identified the following severe impairments: low back pain; irritable bowel

syndrome; partial vision loss; chronic headaches; carpal tunnel syndrome; coronary artery

disease; gastroesophageal reflux disease (GERD); chronic obstructive pulmonary disease

(COPD); depression; and anxiety. AR 21-22. At step three, the ALJ found Jones did not have an

impairment or combination of impairments that met or medically equaled one of the listed

impairments in the regulations. AR 22. At step four, the ALJ found that Jones was unable to

perform her past relevant work but retained the residual functional capacity (RFC) to perform

light work with the following limitations:

> The claimant is able to stand and walk for 5 hours out of an 8-hour
> workday in 30-minute increments . . . . lift 15 pounds . . . . [and] do
> occasional postural movement, but not climb ladders or crawl. The
> claimant is not able to work at heights and should have no exposure to
> hazards. The claimant should not operate heavy machinery. The claimant
> is able to have superficial contact with the general public and should work
> independently. The claimant should have a tolerant/patient supervisor who
> provides hands-on training for changes in the workplace. The claimant is
> able to frequently, but not repetitively, handle objects.

AR 28, 24. In arriving at this conclusion, the ALJ considered Jones's testimony, the lay

testimony of Jones's boyfriend, Daniel Peterson, and the medical opinions of Drs. John Ruduff,

Stephen Rubin, Michael Henderson, James Harris, Tanya Page, Martin Lahr, Sharon Eder,

Joshua Boyd, Bill Hennings, and Luke Patrick. AR 25-28.

At step five, relying on testimony from a vocational expert (VE), the ALJ concluded that Jones was able to perform the job of small parts and products inspector[1] and was, therefore, not disabled. AR 29-30. Jones filed an appeal with the Appeals Council but was denied review. AR 1. Consequently, the ALJ's decision became the final decision of the Commissioner that is subject to judicial review. This appeal followed. Jones argues that the ALJ erred in (a) finding she lacked full credibility; (b) discrediting lay testimony; and (c) formulating the RFC and presenting the hypothetical to the VE.

## SEQUENTIAL ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

---

[1] U.S. Dep't of Labor, Dictionary of Occupational Titles 733.687-042 (4th ed. 1991), available at 1991 WL 679926.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## DISCUSSION

### A.  Plaintiff's Credibility

Jones argues that the ALJ erroneously discounted her credibility on the basis of her daily

activities and failure to stop smoking. There is a two-step process for evaluating the credibility of

a claimant's testimony about the severity and limiting effect of the claimant's symptoms.

*Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether

the claimant has presented objective medical evidence of an underlying impairment 'which could

reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*,

504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.

1991) (en banc)). When doing so, the claimant "need not show that her impairment could

reasonably be expected to cause the severity of the symptom she has alleged; she need only show

that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d

1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46). The ALJ does not have to prepare a function-by-function analysis

for medical conditions or impairments that the ALJ finds neither credible nor supported by the

record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

In discrediting a claimant's credibility, the ALJ may consider objective medical evidence

and the claimant's treatment history, as well as the claimant's daily activities, work record, and

observations of physicians and third parties with personal knowledge of the claimant's functional

limitations. *Smolen*, 80 F.3d at 1284. The Ninth Circuit has said that an ALJ may also consider

"ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior

inconsistent statements concerning the symptoms, . . . other testimony by the claimant that

appears less than candid [and] unexplained or inadequately explained failure to seek treatment or

to follow a prescribed course of treatment." *Id.*

Here, the ALJ found that Jones had a number of medically determinable impairments that

could reasonably be expected to cause her alleged symptoms, but concluded that Jones's

testimony regarding the severity of her symptoms was not entirely credible, "to the extent [it is]

inconsistent with the [RFC], for reasons discussed throughout th[e] opinion." AR 26. The ALJ

then identified five reasons for discrediting Jones's testimony regarding the severity of her

symptoms: (1) inconsistencies between her reported daily activities and alleged symptoms;

(2) failure to comply with recommended medical treatment by continuing smoking; (3) conservative treatment despite allegedly severe mental impairments; (4) inconsistency with the objective medical evidence; and (5) prior inconsistent statements. AR 25-26. Jones only challenges the first two reasons.

### 1.  Daily Activities

Jones argues that the ALJ's credibility determination was flawed because he failed to relate her daily activities to an "inability to sustain activity." *Id*. at. 24-25. There are two ways in which daily activities can form the basis of an adverse credibility finding: where the claimant's activities (a) contradict the claimant's other testimony or (b) meet the threshold for transferable work skills.[2] *See Orn*, 495 F.3d at 639. The Ninth Circuit has recognized that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Jones argues that her situation is comparable to the claimant in *Reddick*, because she too consistently described her activities as "sporadic and punctuated with rest." Jones argues that, as in *Reddick*, this Court should find that the ALJ erred in discrediting Jones's credibility based on her daily living activities. In *Reddick*, however, the ALJ erroneously found that the claimant's daily activities had inherent transferable work skills. 157 F.3d at 723. Here, the ALJ noted that he "place[d] more weight upon inconsistencies than the activities themselves." AR 25. Thus, the ALJ did not discount Jones's credibility because her daily activities met the transferable-work-skill threshold, but because the ALJ found them inconsistent with the alleged severity of her symptoms. The ALJ, therefore, did not err by failing to connect his credibility determination to an inability to sustain activity.

---

[2] Daily activities meet the threshold for transferable work skills when the claimant is able to spend a "'substantial' part of [the] day engaged in transferable skills." *Orn*, 495 F.3d at 639.

Although an ALJ may discredit a claimant's subjective pain testimony based on an inconsistency with daily activities, here, the ALJ erred by concluding that Jones's alleged symptom testimony was inconsistent with her reported daily activities. The ALJ concluded that Jones is "able to generally perform her activities of daily living with minimal difficulty." AR 25. The record as a whole, however, does not support this conclusion. In discrediting Jones's credibility, the ALJ referenced step three of his opinion where he concluded that Jones has "no restriction" in her activities of daily living because she reports: dressing, bathing, and feeding herself; caring for her two small dogs, including feeding them and taking them for short walks; and performing basic household chores, preparing meals, and doing necessary shopping and errands. AR 23-25.

Although Jones described engaging in these activities, she consistently qualified them as light and requiring that she take regular breaks due to pain. *See* AR 48 (describing that her son does the cooking and mopping, but she sometimes vacuums and does the dishes, with intermittent rest, finding it hard to stand at the sink to do them), 295 (describing engaging in "light" housework), 296 (describing doing "few" dishes, laundry once a week, and light vacuuming), 375 (describing engaging in daily activities "with considerable pacing, taking breaks on frequent basis due to back pain and fatigue"). Jones's reported daily activities do not sufficiently contradict her pain testimony in any manner that bears a meaningful relation to Jones's credibility. Indeed, Jones's reported daily activities reflect only an attempt to lead a normal life in the face of limitations. *Reddick*, 157 F.3d at 722; *see also Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (noting that disability claimants need not "vegetate in a dark room" in order to be deemed eligible for benefits). The ALJ, therefore, erred in relying on Jones's daily activities to discount her credibility.

**2.   Failure to Follow a Prescribed Course of Treatment**

Jones next argues that the ALJ erred by relying on her continued smoking to discount her credibility. The ALJ found that Jones "continues to smoke, despite being repeatedly advised and admonished to stop smoking," constituting a failure to follow a prescribed course of treatment. AR 25. An ALJ may consider a failure to follow a prescribed course of treatment when weighing a claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008).

Jones claims that the record fails to establish that she was given a "prescription" to quit smoking or referrals to any cessation clinics. Jones cites to *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998), to support her argument that there is a recognized difference between failure to comply with advice by a medical provider to quit smoking and a referral to cessation services to quit. Reliance on *Kelley* is misplaced; in that case, the court rejected *denying benefits* based a claimant's alleged failure to follow treatment, not *discounting credibility*. 133 F.3d at 589-90. Moreover, Jones fails to provide any support for her claim that referral to a cessation clinic is somehow requisite to establishing a "prescription" and, thus, an adverse credibility finding for failure to quit smoking. Contrary to Jones's contentions, substantial evidence supports the ALJ's determination that Jones was prescribed to quit smoking. *See* AR 412, 438, 531, 557, 563, 566, 574.

Citing SSR ("Social Security Ruling") 82-59, 1982 WL 31384 (Jan. 1, 1982), Jones next argues that the ALJ erred because the record failed to establish that quitting smoking would enable her to work. *Id.* at 26. Although SSR 82-59 explicitly requires that the prescribed treatment be "clearly expected to restore" an individual's capacity to work, this provision relates solely to determinations of *non-disability* based on an alleged failure to follow prescribed treatment, not *credibility*. The ALJ did not find Jones was *not disabled* due to a failure to follow prescribed treatment. Accordingly, Jones's reliance on SSR 82-59 is misplaced.

Next, Jones contends that she provided the ALJ an adequate explanation for failing to stop smoking. The ALJ must consider a claimant's reasons for failing to adhere to recommended treatment before making an adverse credibility finding. *See Smolen*, 80 F.3d at 1284. An ALJ may discount a claimant's credibility due to an "*unexplained or inadequately explained*" failure to follow a prescribed course of treatment." *Tommasetti*, 533 F.3d at 1039 (emphasis added); *see* SSR 96-7p, 1996 WL 374186 (July 2, 1996) (noting that the ALJ must review the record to determine whether there are "any explanations that the individual may provide, or other information in the case record, that may explain . . . failure to seek medical treatment" before making an adverse credibility determination). In *Lingenfelter*, the Ninth Circuit rejected the ALJ's conclusion that the claimant "fail[ed] to follow, without adequate explanation, a prescribed course of treatment" when his "insurance refused to authorize the recommended surgeries." 504 F.3d at 1040. Like the claimant in *Lingenfelter*, Jones provided numerous explanations regarding her failure to quit smoking: she has a severe nicotine addiction; she lives near others who smoke, making it difficult for her to quit; and her insurance covers only half of the nicotine cessation products she needs. *See* AR 56-57, 438, 543, 716, 718. "Where a claimant provides evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so." *Smolen*, 80 F.3d at 1284. The fact that Jones failed to stop smoking is not a clear and convincing reason for discrediting her symptom testimony, and the ALJ's reliance on this reason was error.

### 3.  Harmless Error

Although the Court has found it was error to discount Jones's credibility based on her daily activities and continued smoking, the ALJ relied on other adequately supported reasons that Jones does not challenge, namely: conservative treatment, inconsistencies between her claimed symptoms and the objective medical evidence, and prior inconsistent statements.

The ALJ relied on the fact that, despite claims of severe mental impairments, Jones has "received only conservative treatment (medication) and is not engaged in psychotherapy." AR 25. Conservative treatment in the face of an allegedly severe impairment can justify a claimant's adverse credibility determination. *Burch*, 400 F.3d at 681; *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Jones testified that she was not seeking psychotherapy due to transportation problems. AR 44. The ALJ found Jones's excuse inadequate because she was "able to get to other medical appointments without apparent difficulty." AR 25. This provides substantial evidence to support to the ALJ's credibility determination.

The ALJ also properly relied on inconsistencies between the severity of Jones's alleged symptoms and the objective medical evidence. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (recognizing inconsistencies between the severity of claimant's alleged symptoms and the medical evidence is a proper basis for an adverse credibility determination). The ALJ's conclusion that the objective medical evidence is inconsistent with the severity of Jones's alleged pain is also supported by substantial evidence. For example, Jones's claims of severe carpel tunnel was found by Dr. Henderson to be "medically inconsistent" with his examination. AR 26, 680. Jones also testified that she cannot do the dishes very long because it is "hard to stand at the sink[.]" AR 48. The objective medical evidence indicates that Jones can stand longer than it would take to wash the dishes. *See* AR 680 (opining that Jones can stand two hours at a time, six hours per day), 380 (opining that Jones can stand three hours intermittently in an eight-hour period). Jones's pain testimony was also undermined by the opinion of Dr. Henderson who found Jones's "movements appear[ed] free and without restriction." AR 678. He noted that Jones "complained about pain in many areas of the examination" but "she did not appear to be in pain." *Id.* These reasons constitute substantial evidence in support of the ALJ's

conclusion that Jones's subjective pain testimony is inconsistent with the objective medical evidence, and that Jones, therefore, lacked full credibility.

Finally, the ALJ properly pointed to internal inconsistencies in Jones's statements, undermining her credibility. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (noting that the ALJ may use ordinary techniques of evaluating credibility, including consideration of "any inconsistent statements in [the claimant's] testimony"). The ALJ noted that Jones testified to not driving because of an inability to see and, in another instance, claimed she did not drive because she did not own a car. AR 26. The ALJ's conclusion that Jones made inconsistent statements is supported by substantial evidence in the record. *See* AR 79 (Jones's hearing testimony that she does not drive because she cannot see), 375 (Jones's inconsistent statement that she does not drive because she does not own a car).

Relying on Jones's conservative treatment, inconsistencies between her claimed symptoms and the objective medical evidence, and prior inconsistent statements in discounting her credibility, the ALJ provided specific, clear, and convincing reasons supporting his credibility determination. *See Lingenfelter*, 504 F.3d at 1036. An ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ's credibility determination, therefore, stands. Any error the ALJ may have committed in relying on Jones daily activities or failure to stop smoking was harmless because it does not negate the validity of the ALJ's ultimate conclusion that Jones's lacked full credibility. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (finding errors in the ALJ's credibility determination harmless where the ALJ provides "specific reasons," "substantial evidence" supports the determination, and the error

"does not negate" the validity of the ALJ's "ultimate [credibility] conclusion" (alteration in original) (quotations marks and citation omitted)).

## B.  Lay Witness Testimony

Jones next argues that the ALJ erred by failing to give germane reasons for discounting the credibility of her boyfriend Daniel Peterson. Lay testimony regarding a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence the ALJ must take into account. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Indeed, a claimant's lay witness, "though not a vocational or medical expert" is "not disqualified from rendering an opinion as to how [the claimant's] condition affects [his or her] ability to perform basic work activities." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing 20 C.F.R. § 404.1513(d)(4)). The ALJ may reject lay testimony if he provides "arguably germane reasons" supported by substantial evidence, even if those reasons are not clearly linked to the ALJ's determination. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Inconsistency with the medical evidence constitutes a germane reason sufficient to discredit lay testimony. *Bayliss*, 427 F.3d at 1218. The Court will uphold the ALJ's determination of a lay witness's lack of credibility due to inconsistency with the medical record if there is substantial evidence supporting the ALJ's decision. *See id.*

First, Jones argues that the ALJ improperly relied on the fact that Peterson was not medically trained to make clinical observations in discrediting his testimony. The ALJ did not discredit Peterson's testimony because he lacks medical expertise; rather, while discussing Peterson's testimony, the ALJ merely noted that, when considering the lay testimony of persons lacking medical training and who have not seen the claimant in a professional capacity in connection with his or her impairments, certain factors, such as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and other factors supporting

or refuting the evidence should be considered. AR 28. This rationale is a correct statement of the law. *See* SSR 06–03p, 2006 WL 2329939, at *5 (Aug. 9, 2006) (noting that, when considering the opinion of "non-medical professionals, it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual . . . whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion").

Second, Jones contends that the ALJ failed to provide a germane reason to discredit Peterson's testimony. The ALJ found Peterson's statement "generally credible as to his observations," but "inconsistent with the medical evidence[.]" AR 28. Jones misunderstands the ALJ's rationale, arguing that the ALJ erroneously discredited Peterson's testimony because it was not corroborated by the medical evidence. The ALJ, however, did not discredit Peterson's testimony because the severity of Jones's alleged symptoms were not corroborated by medical evidence. Peterson's testimony was discredited because it was "inconsistent" with the medical evidence and Jones's reported level of activity.[3] AR 28. An ALJ's finding that lay opinion testimony conflicts with medical evidence is a germane reason to reject such testimony. *Barton v. Astrue*, 500 F. App'x 607, 609 (9th Cir. 2012) (unpublished) (citing *Bayliss*, 427 F.3d at 1218); *see also Lewis*, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). That Peterson's testimony was inconsistent with the medical evidence is also supported by substantial evidence. For example, Peterson testified that Jones is unable to squat. AR 308. Medical evidence indicates that Jones can perform a full squat and recovery. AR 26, 379. Additionally, Peterson's reports of Jones's

---

[3] Much of Peterson's testimony regarding the severity of Jones's symptoms is virtually identical to Jones's own testimony. As Jones's reports of daily activities were an improper basis to reject her credibility, so too is the ALJ's discrediting of Peterson's testimony on that ground. *See supra* Part A.1.

limitations in standing, which mirrors Jones's testimony, is undermined by the medical evidence

for the same reasons Jones's testimony was undermined by the medical evidence. *See supra* Part

A.3. The ALJ, thus, did not err in discrediting Peterson's statements for those same reasons. *See*

*Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (noting that where the

ALJ provides clear and convincing reasons to discount a claimant's credibility, "it follows that

the ALJ also gave germane reasons for rejecting [similar lay] testimony").

## C.  RFC and Hypothetical Provided to the VE

Lastly, Jones argues that the ALJ erroneously omitted from the RFC and hypothetical

presented to the VE the functional limitations caused by her PTSD (post-traumatic stress

disorder), depression, and anxiety, which were described in the medical opinions to which the

ALJ gave great weight. Jones contends that: (1) the hypothetical provided to the VE failed to

provide sufficient information for the VE to properly incorporate the RFC's limitation requiring

a tolerant and patient supervisor and (2) the RFC failed to include Dr. Patrick's conclusion that

Jones has "moderate" limitations in persistence.

### 1.  Tolerant and Patient Supervisor Limitation

The RFC included a limitation requiring that Jones have a tolerant and patient supervisor.

AR 24. At the hearing, the ALJ included in the dispositive hypothetical to the VE the limitation

that Jones must have a tolerant and patient supervisor. AR 83. When Jones's counsel later

inquired into the meaning of "tolerant and patient supervisor," the VE stated that the party

offering the hypothetical must define that limitation and that "variables" defining the meaning of

"tolerant and patient supervisor" must be provided before that limitation could be properly

evaluated. AR 89-90. Variables defining the limitation of a tolerant and patient supervisor,

however, were never provided by the ALJ to the VE. *See* AR 80-106. Thus, the transcript reveals

that the VE lacked an adequate understanding of Jones's limitation requiring a tolerant and

patient supervisor and, as a result, the VE failed to include it in his analysis regarding potential jobs that Jones could perform. Notably, when pressed on this point, the VE testified that without proper clarification, he "[did] not put a lot of weight on that classification." AR 89.

Because the RFC included the limitation of a tolerant and patient supervisor, it was error for the ALJ to fail to provide sufficient information in the hypothetical to the VE for the VE to properly incorporate this limitation. *See Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) ("Because the hypothetical posed by the ALJ to the [VE] did not reflect all of [the claimant's] limitations, the expert's opinion has no evidentiary value and cannot support the ALJ's decision. This requires that we remand [the claimant's] case to the Secretary for reconsideration."). This issue is, therefore, remanded so that the ALJ can provide the VE a sufficient description of Jones's limitation to a tolerant and patient supervisor.

### 2. Persistence Limitations

Next, Jones argues that the RFC and the hypothetical provided to the VE failed to include Dr. Patrick's conclusion that Jones has a moderate limitation in persistence due to depression. In addition to consultative examining psychologist Dr. Patrick, State agency psychologists Drs. Boyd and Hennings evaluated Jones's mental impairments and opined as to Jones's functional limitations. Dr. Patrick concluded that with respect to persistence, Jones would likely be "moderately impacted by depressive symptoms, including irritability and motivation." AR 375-76. The ALJ afforded "considerable weight" to Dr. Patrick's opinion that Jones has a "moderate" limitation in persistence. AR 28. Drs. Boyd and Hennings opined that Jones has only a "mild" limitation in concentration, persistence, or pace. AR 115, 128, 147, 162. With respect to concentration and persistence, Drs. Boyd and Hennings concluded that depression would interfere with Jones "completing detailed tasks on a consistent basis," but not her ability to "carry out simple tasks." AR 119, 132, 151, 152, 166, 167. The ALJ afforded "significant

weight" to Drs. Boyd and Hennings' opinions. AR 28. The ALJ also explicitly found that Jones

has "mild" limitations in concentration, persistence, or pace. AR 23.

An RFC determines a claimant's "capacity for work activity on a regular and continuing

basis." 20 C.F.R. § 404.1545(b)-(c). It characterizes "the most" a claimant can do in a "work

setting," despite "limitations." 20 C.F.R. § 404.1545(a)(1). The "RFC assessment considers only

functional limitations and restrictions that result from an individual's medically determinable

impairment or combination of impairments, including the impact of any related symptoms."

SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996); *see* also 20 C.F.R. § 404.1528(b)-(c). The

functional limitations caused by a claimant's medically determinable impairments include

"medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2). The

ALJ must assess "all of the relevant medical and other evidence" pertaining to a claimant's

"ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R.

§ 404.1545(a)(3), (4). Mental limitations potentially affecting one's ability to work include:

"limitations in understanding, remembering, and carrying out instructions, and in responding

appropriately to supervision, co-workers, and work pressures in a work setting . . . ." 20 C.F.R.

§ 404.1545(c).

"[A]n RFC that fails to take into account a claimant's limitations is defective."

*Valentine*, 574 F.3d at 690. An ALJ "may not ignore" findings of fact by "State agency medical

and psychological consultants and other program physicians and psychologists." SSR 96-6p,

1996 WL 374180, at*2 (July 2, 1996). Indeed, RFC assessments "must always consider and

address medical source opinions. If the RFC assessment conflicts with an opinion from a medical

source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996

WL 374184, at *7.

With respect to non-exertional limitations, the RFC provides that Jones "is able to have superficial contact with the general public," "should work independently," and "should have a tolerant/patient supervisor who provides hands-on training for changes in the workplace." AR 24. The question is whether the RFC adequately translated the credited medical opinions regarding Jones's mental impairments, which limit Jones to "simple tasks" and "non-direct public contact and casual interactions [with] co-workers" and include moderate limitations in persistence, into sufficient functional limitations. *See Amanti v. Comm'r Soc. Sec. Admin.*, 2012 WL 5879530, at *5 (D. Or. Nov. 19, 2012) ("Where the ALJ credits the opinion of a physician, the ALJ must translate the plaintiff's condition as described in the physician's opinion into functional limitations in the RFC.").

Here, the ALJ found that Jones has a mild limitation in concentration, persistence, or pace but yet afforded considerable weight to Dr. Patrick's opinion that Jones has a "moderate" limitation in persistence due to depression. AR 23, 28. The ALJ failed to explain why he discounted Dr. Patrick's finding of a moderate limitation in persistence.

The Commissioner contends that the RFC and hypothetical to the VE contained all of Jones's mental limitations because they reflected Drs. Boyd and Hennings' translation of Dr. Patrick's noted persistence limitations, requiring that Jones perform "simple tasks." Contrary to the Commissioner's contention, however, the ALJ omitted from the RFC any limitation relating to persistence generally or "simple tasks" specifically. The ALJ is responsible for resolving conflicts in the medical evidence. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). If the ALJ was rejecting Dr. Patrick's opinion regarding Jones's moderate limitation in persistence, he was required to provide specific, legitimate reasons. *See Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995) ("[T]he opinion of an examining doctor,

PAGE 19 – OPINION AND ORDER

even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.") (citations and internal quotation marks omitted); *Amanti*, 2012 WL 5879530, at *5; SSR 96-8p, 1996 WL 374184, at *7 (When the RFC conflicts with the medical source opinions, the ALJ "must explain why the opinion was not adopted.").

Because the RFC omitted limitations identified in the medical opinions of Dr. Patrick, the RFC and hypothetical to the VE failed to include all of Jones's functional limitations caused by her mental impairments. *See Embrey*, 849 F.2d at 423; *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995) (noting that the hypothetical posed to the VE must "include all of the claimant's functional limitations"). Accordingly, this case is remanded so that the ALJ may either reject, with specific and legitimate reasons, Dr. Patrick's opinion that Jones has a moderate limitation in persistence or include this limitation in the RFC and hypothetical to the VE.

## CONCLUSION

The Commissioner's decision that Jones is not disabled is **REVERSED** and this case is **REMANDED** for further proceedings as directed herein.

**IT IS SO ORDERED**.

DATED this 18th day of July, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge